UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD LAMONT DAVIS,

    Plaintiff,

v.

UNKNOWN FIERING and
DALE BONN,

    Defendants.
_____/

Case No. 1:23-cv-1225

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Plaintiff Ronald Lamont Davis ("Davis") is a prisoner in the custody of the Michigan Department of Corrections (MDOC). Davis filed this civil rights lawsuit alleging that two MDOC employees, Michele Fiering and Dale Bonn, retaliated against him while he was a prisoner at Ionia Correctional Facility (ICF). This matter is now before the Court on defendants' motion for summary judgment (ECF No. 29).

    **I.**    **Davis' complaint**

Davis' claim is based on the following allegations.

On July 10, 2023: Davis asked defendant Fiering "if she was taking away the MSI [Michigan State Industries] prisoner 15 minute work break;"[1] Davis "explained to her that by doing so she would be violation [sic] work labor laws;" Fiering said "she did not care about the

---

[1] "MSI is 'a bureau of the Michigan Department of Corrections . . . [that] operates about 39 factories in Michigan prisons,' *Holt v. Mich. Dep't of Corr., Mich. State Indus.*, 974 F.2d 771, 772 (6th Cir. 1992); *see* Mich. Comp. Laws Ann. § 791.271 (providing that the assistant director of the bureau of prison industries is 'vested with the control, management, coordination and supervision of the industrial plants connected with the several penal institutions. . . ')." *Ronald Lamont Davis v. Bailey*, No. 1:22-cv-790, 2022 WL 17592323 at *2 (W.D. Mich. Dec. 13, 2022).

1

labor laws because they do not apply to prisoners;" Davis said he was going to file a grievance against her concerning the matter; Fiering said "[w]ith just one phone call I'll have you out of here;" and, Davis filed a grievance against Fiering. *Id*. at PageID.2-4.

On July 20, 2023, defendant Bonn reviewed the grievance. *Id*. at PageID.5.

On July 21, 2023, Bonn participated in the adverse action of a retaliatory transfer by approving Davis' transfer to the Chippewa Correctional Facility (URF). *Id*.

Finally, on July 27, 2023, plaintiff was transferred to URF. *Id*.

For his relief, Davis seeks a judgment "for compensatory damages against all defendants seperately [sic] in their individual capacity of $250,000.00 along with intrest [sic], punitive, presumed, and exemplary damages." *Id*.

## II.     Defendants' motion for summary judgment

### A.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

2

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**B.     First Amendment retaliation claim**

Davis seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and brackets omitted). To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person

3

of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. "Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001), citing *Thaddeus-X*, 175 F.3d at 399.

### 1. Protected conduct

Davis' retaliation claim is based upon the alleged protected conduct of filing grievance ICF-23-0685-17I ("685") (ECF No. 30-7). In this grievance, Davis stated that he is entitled to a 15-minute paid break from 12:45 p.m. to 1:00 p.m. according to the MSI Operating Manual, and that defendant Fiering violated both the MSI Operating Manual and MDOC Policy when she "stopped" the break:

> On 7/10/23 I went to the MSI Supervisor Frieng (Spelling?) and asked her if she was stopping the MSI prisoner workers i.e. myself from being allowed my 15 minute break from 12:45pm to 1pm and she told me that she was. I then explained to her that according to the MSI Operating Manual, that I was entitled to a paid break and that she was violating MDOC Policy & MSI Operating Manual in which governs [sic] prisoner labor. All she told me was that she was in charge and that's just the way it's going to be. At that point I informed her that I was going to file a grievance against her about this matter. And her response was "if you do, you will not be at MSI for much longer!" I took her comment as a threat of retaliation against me for exercising my 1st Amendment right to grieve the government.

Grievance 685 at PageID.172.

4

Contrary to Davis' claims that defendant Fiering violated provisions of the MSI Operating Manual, the grievance investigation found that the Manual "does not address the issue of work breaks" and "only discusses unpaid lunch and count time." *Id*. at PageID.173.

At his deposition, Davis characterized the grievance as raising a different issue, *i.e.*, that defendant Fiering's decision was "unjust" because it involved a "common practice agreed upon by MSI and the prisoners" and that "a person is entitled to a break after so many hours of working", and that unidentified "labor laws" exist:

> Q      What were you grieving her for specifically?
>
> A      At that particular time, I was grieving about the 15-minute breaks, and how it was against work labor law, and how -- that it was unjust --
>
> Q      Go ahead.
>
> A      And how I felt it was unjust because it was a common practice agreed upon by MSI and the prisoners. Prisoners do have labor laws; right? There are labor laws in government prisons; right? Exactly. This is not a good rabbit hole, because there are labor laws. And a person is entitled to a break after so many hours of working. So you can go down that rabbit hole if you like, but there are labor laws.

Davis Dep. (ECF No. 30-6, PageID.162-163).

Defendants contend that Davis did not engage in protected conduct to support his First Amendment retaliation claim because Grievance 685 was frivolous. *See* Defendants' Brief (ECF No. 30, PageID.120). "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). "This right is protected, however, only if the grievances are not frivolous." *Id*. Stated another way, an inmate has a right to file "non-frivolous" grievances against prison officials. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). " 'Abusive or manipulative use of a grievance system [is] not . . . protected conduct,' and prison officials may take action in response to the

5

prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 Fed. Appx. 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)). In this regard, a grievance involving "verifiably untrue" allegations is frivolous. *See Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741 at *3 (Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *R&R adopted*, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020).

Here, Davis' Grievance 685 is frivolous, because the grievance is based upon defendant Fiering's violation of a non-existent work rule, *i.e.*, that prisoners are entitled to a 15-minute paid break from 12:45 p.m. to 1:00 p.m. as set forth in the MSI Operating Manual and MDOC Policy.

The MSI Operating Manual addresses "Work Hours" as follows:

> Detailed information regarding work hours and scheduling are posted in each Factory. Work hours begin when a prisoner punches in, or when their call-out begins, whichever is later. Prisoners are not paid for lunch or during count time. Prisoners will not be paid past their callout time because they are waiting to be out-processed by custody staff.

MSI Op. Man. (ECF No. 30-8, PageID.178).

As discussed, Davis questioned defendant Fiering about the work rules on July 10, 2023. Defendants presented a posting from the workplace which set out the work schedule effective on that date, which stated in pertinent part,

> **MSI End time: 2:15**
> (The earliest you can clock out to get a full days pay is 2:09)
>
> **Lunch Break will be 15 minutes**
> (please try to return to your machine within 20 minutes)

6

> **Tools will be collected at 1:55**
>
> **There will no longer be a 12:45 break.**
>
> **However you will continue to be paid for your lunch break**
>
> **Effective 7/10/23**

MSI Posting (ECF No. 32-1, PageID.240) (emphasis in original).

MSI also notified the prisoners that,

> **Starting August 1, 2023 your lunch and count time are unpaid time. This time equates to 24 minutes. Please refer to your MSI operating handbook for clarification.**

*Id.* (emphasis in original).

The relevant MDOC Policy Directive, 05.02-110 ("Prisoner Work Assignment Pay and School Stipend") does not address scheduled breaks. However, the policy incorporates the MSI Operating Manual as follows:

> The Administrator of Michigan State Industries (MSI), Budget and Operations Administration (BOA), shall ensure that the MSI Operating and Work Rule Manual is maintained, reviewed annually, and updated as needed. The Manual shall identify requirements unique to MSI assignments, including the MSI positions to which prisoners may be assigned and the appropriate pay rate for each. Where in conflict with this policy, the MSI Operating and Work Rule Manual shall control for prisoners assigned to MSI positions. The Manual shall be made available to Wardens for use by the Classification Director and other staff involved in the MSI work assignment pay process.

Policy Directive 05.02.110 ¶ B. (ECF No. 30-9, PageID.187).

Notably, while Davis' grievance 685 asserted that defendant violated provisions of the MSI Operating Manual and MDOC Policy, Davis admitted that the 15-minute break at issue was an "unspoken agreement" between the prisoners and MSI.[2]

---

[2] At his deposition, Davis explained, "But it was already a custom and practice that we were allowed at that time. It

7

Based on this record, Davis' grievance, which accused Fiering of violating the work rules set forth in the MSI Operating Manual and MDOC Policy, was frivolous and not protected conduct under the First Amendment. Accordingly, defendants' motion for summary judgment should be granted on this ground.

### 2. Adverse action

In addition, Davis' retaliatory transfer claim fails because there was no adverse action taken against him. "[G]enerally, a transfer of a prisoner from one facility to another does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir. 2011) (internal quotation marks omitted). *See, generally, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("the Constitution does not mandate comfortable prisons"). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers–El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). However, the Sixth Circuit created a narrow exception to this general rule:

> In *Siggers–El*, we carved out an exception for cases in which foreseeable, negative consequences inextricably follow from the transfer - such as the prisoner's loss of his high-paying job and reduced ability to meet with his lawyer. In these exceptional cases, whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact.

*Jones*, 421 Fed. Appx. at 553 (6th Cir. 2011) (internal quotation marks, citations and brackets omitted). To survive summary judgment on a retaliatory transfer claim, a prisoner must

---

was already agreed upon, unspoken agreement between the prisoners and the MSI staff that we were allowed at that break, because we sacked – we were supposed to get two, but we sacked the first one so that we can get paid for lunch." Davis Dep. at PageID.161.

demonstrate that he has an exceptional case in which foreseeable, negative consequences inextricably follow from the transfer. *Id.*, citing *Siggers-El*, 412 F.3d at 701-02.

Here, Davis has not shown that this is an exceptional case. The thrust of Davis' claim was that "defendant Fiering knew that having the plaintiff transferred to URF would constitute as having him fired from the MSI and he would be losing his high-paying skilled job." Compl. at PageID.6. As an initial matter, it was Suzanne Kessler, ICF transfer coordinator, who initiated Davis' transfer from ICF to URF on July 14, 2023. Kessler Aff. (ECF No. 30-4, PageID.144). Kessler referred to a non-retaliatory reason for the transfer, *i.e.*, "Davis was being transferred due to backfill, which is a common reason and occurrence for transfer within the [MDOC]." *Id.* at PageID.145.[3] In addition, the MDOC accommodated Davis' work assignment at MSI. In her affidavit, Kessler stated that since Davis already worked at the MSI factory at ICF, his transfer was limited to MDOC correctional facilities with MSI factories, which included URF. *Id.* at PageID.145. Accordingly, defendants' motion should be granted on this ground.[4]

### III. Recommendation

Accordingly, I respectfully recommend that defendants' motion for summary judgment (ECF No. 29) be **GRANTED** and that this case be **terminated**.

Dated: December 31, 2024                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge

---

[3] Kessler's affidavit did not explain the term "backfill" in the context of Davis' transfer.

[4] Defendants also included a claim for qualified immunity. *See* Defendants' Brief (ECF No. 30, PageID.130-131). Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Having determined that defendants did not violate Davis' constitutional rights, it is unnecessary to address defendants' qualified immunity claim.

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).